HENRY L. EADS, Respondent, v. CHAS. E. ORCUTT et al., Appellants.

79 511
98 ²242

Kansas City Court of Appeals, April 3, 1899.

1. **Banks and Banking**: RECEIVING DEPOSITS: LIABILITY OF OFFICER: STATUTE: PENALTY. Section 2760, Revised Statutes 1889, though providing a remedy for the creditor, and in that respect remedial, inflicts a punishment on the officer of a bank for his transgression by making him pay the debt of the corporation, which he did not owe, and is therefore penal and the depositor's remedy is at law. *Quaere:*

    (1) Whether such construction affects the period prescribed by the statute of limitations as to penalties.

    (2) Whether the depositor can maintain the action against the officer though he could make his deposit out of the bank.

    (3) Whether the action would survive against the heirs and executors of the offending officer.

    (4) Whether the offending officer is entitled to subrogation to the rights of the creditors against the bank.

2. ———: ———: ELECTION OF REMEDIES. The fact that the depositor has proved up his claim before the assignee of the insolvent bank will not preclude his pursuing the offending officer with an action under the statute. The two remedies not being inconsistent may be pursued at the same time.

3. ———: ———: ———: SATISFACTION. Though the depositor may pursue two remedies at the same time against one or more persons, he can have but one satisfaction.

4. ———: ———: KNOWLEDGE OF FAILING CONDITION OF THE BANK. The evidence in this case is held sufficient to charge two of the defendants with knowledge of the failing condition of the bank at the time the deposits in question were received, and this, though one of them was not participating in the active management of the institution.

5. ———: ———: INSOLVENCY: INSTRUCTION. Insolvency under the statute relating to the receiving of deposits, is an inability to meet the ordinary demands against the bank in the usual and ordinary course of business, and instructions to that effect are approved.

6. ———: ———: DUTY OF OFFICERS: PRESUMPTION. It is the duty of officers of a banking institution receiving or assenting to the reception of deposits to know the financial condition of the bank, and the law presumes they do know it.

*Appeal from the Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

ALEXANDER & ALLEN and HAMILTON & DUDLEY for appellants.

(1) The statute is not penal and only creates a civil liability. Harris v. Dorchester, 40 Mass. 112; Crease v. Babcock, 10 Mass. 525; Bank v. Stevenson, 10 Gray 232; Low v. Buchanan, 94 Ill. 76; Harper v. U. M. Co., 100 Ill. 225; Rounder v. McCormick, 114 Ill. 252; Queenan v. Palmer, 117 Ill. 619; Wolverton v. Taylor, 132 Ill. 195; Hornor v. Henning, 93 U. S. 228; Huntington v. Attrill, 146 U. S. 657; Terry v. Little, 101 U. S. 216; Stone v. Chisolm, 113 U. S. 302; Stephens v. Overstolz, Ex'r, 43 Fed. Rep. 465; Welles v. Graves, 41 Fed. Rep. 459; State v. Kelsey, 89 Mo. 630; Cook on Stockholders and Corporations, secs. 22, 223. (2) Having elected to pursue their remedy against the bank, the plaintiff and his assigns can not now pursue their remedy against these defendants. Fowler v. Bank, 113 N. Y. 45; 6 Bac. Ab. Elect. 431; Bigelow, Estoppel, 578; Herman, Estoppel, 461; Pom. Rem., secs. 567, 570, 801; Bank v. Beale, 34 N. Y. 473; Kennedy v. Thorpe, 51 N. Y. 174; Field v. Bland, 81 N. Y. 239; Morris v. Rexford, 18 N. Y. 552; Hughes v. Mining Co., 72 N. Y. 209; Smith v. Knapp, 30 N. Y. 591; Redmond v. Clark, 46 N. Y. 354; May v. LeClaire, 78 U. S. 217; 20 L. Ed. 50; Nanson v. Jacob, 93 Mo. 344; Roan v. Winn, 93 Mo. 512; Kendrick v. Mfg. Co., 60 Mo. App. 22; Rice v. McClure, 74 Mo. App. 382; O'Brien v. Haydock, 59 Mo. App. 653; Slate Co. v. Cornice Co., 62 Mo. App. 573. (3) But, on the other hand, if section 2760, Revised Statutes 1889, is penal, it should be strictly construed. Am. and Eng. Ency. of Law [1 Ed.], p. 375

(2), citing numerous authorities. A person charged with receiving a deposit as an officer of a bank when it was insolvent, is not guilty of a crime under the laws of Kansas, 1891, chapter 43, section 16, because through negligence he does not know its condition; but he must have received it knowing the bank to be insolvent. State v. Tomblin, 57 Kan. 841; 48 Pac. Rep. 144; Swentzel v. Bank, 23 Atl. Rep. 405; Briggs v. Spaulding, 141 U. S. 132. An officer or director in a corporation who is not active in the management of its affairs, is not presumed to know its condition. 3 Thompson on Corporations, sec. 4098; Rudd v. Robinson, 126 N. Y. 113; Bank v. Drake, 29 Kan. 311; State of Kansas v. Warner, decided at fall term 1898—not reported; State v. Wells, 134 Mo. 238. (4) The definition of insolvency contained in plaintiff's instructions is erroneous. A bank is insolvent when it is unable to meet its liabilities as they become due in the ordinary course of business. A bank is solvent, in the sense of the law, as long as it is meeting its liabilities as they become due, and there is a reasonable expectation on the part of its officers, familiar with its affairs, of continuing to do so. In determining this question of the knowledge of the insolvency on the part of the president or cashier, the jury should consider their conduct and demeanor in reference to the affairs of the bank, whether or not they were operating in good faith, and whether or not they had a reasonable expectation of redeeming all the deposits. Minton v. Stahlman, 34 S. W. Rep. 225.

HENRY L. EADS, HARBER & KNIGHT and O. P. HUBBELL for respondent.

(1) Plaintiff made a *prima facie* case by showing that deposits were made and that the bank was insolvent at the time. There being evidence to support the verdict, it is conclusive on all questions of fact. Speer v. Burlingame,

61 Mo. App. 94. (2) Plaintiff's instructions were properly given. Defendants' instructions were more favorable than they deserved. Speer v. Burlingame, 61 Mo. App. 75; State v. Burlingame, 48 S. W. Rep. 72; State v. Buck, 120 Mo. 479; 3 Am. and Eng. Ency. of Law [2 Ed.], 847; Ring v. Paint & Glass Co., 44 Mo. App. 111; State v. Sattley, 131 Mo. 464. (3) The depositors, by procuring allowance of their claims before assignee, waived no right against defendants. Ins. Co. v. Landis, 50 Mo. App. 120, and cases cited on this topic by appellants. (4) Plaintiff, as assignee of depositors, has pursued the proper remedy. Cummings v. Winn, 89 Mo. 51. Their claims were assignable. State v. Heckart, 49 Mo. App. 284; Snyder v. Railroad, 86 Mo. 613; Hill v. Ore and Steel Co., 90 Mo. 106; Smith v. Sterritt, 24 Mo. 260; Turner v. Hayden, 33 Mo. App. 1. (5) If there is any question of limitation here it is settled by Revised Statutes 1889, sections 4007, 5791, 6792.

ELLISON, J.—This action, based on section 2760, Revised Statutes 1889, was brought by plaintiff as a depositor against the defendants as officers of the Citizen's Bank of Jamesport to recover the amount of deposits made by him between March 15 and July 13, 1893, when the bank was known to defendants to be insolvent or in failing circumstances. The judgment in the circuit court was for plaintiff.

STATEMENT.

The statute referred to is as follows: "No president, director, manager, cashier or other officer or agent of any bank or banking institution organized and doing business under the provisions of this article, or of any law of this state, shall receive or assent to the reception of deposits, or create or assent to the creation of any debts by such bank or banking institution, after he shall have knowledge of the fact that it is insolvent or in failing circumstances. Every person violating the provisions of this section shall be indi-

vidually responsible for such deposits so received and all such debts so contracted: Provided, any director who may have paid more than his share of the liabilities mentioned in this section may have the proper remedy at law against such other persons as shall not have paid their full share of such liabilities; and provided, further, that in case of the insolvency of one or more of such officers, agents or managers, the same shall be paid, for the time being, by those who are solvent, in equal proportions."

The points against the judgment, necessary to notice, as made by defendants, are as follows:

1. That the liability imposed by the last clause of section 27, article 12, of the constitution, and made operative by the act of May 15, 1877 (Laws of Mo. 1877, p, 33, R. S. 1889, sec. 2760), is not penal or to recover a forfeiture, but only intended to create a civil liability and afford a remedy to enforce it.

2. That an action at law will not lie, and the only remedy is by a bill in equity against the defendants for the benefit of all the creditors and depositors alike.

3. That inasmuch as the plaintiff's assignors had these same debts allowed by the assignee of the bank, their demands were thereby merged into judgments, and that plaintiff's assignors having elected to pursue their remedy against the bank, can not now, either by themselves or by an assignee, pursue their remedy against these defendants.

4. If section 2760, Revised Statutes 1889, is penal it should be strictly construed, and that only officers, agents, managers and directors of banks, who are at the time in active control and management of the bank, are liable, and then only such officer, etc., as in fact received the deposit, or is present at the time and assents thereto, with knowledge at the time of the reception of such deposit that the bank is insolvent or in a failing condition, and that the proof

must show these facts affirmatively before liability can·be created.

5. That the statute only applies to an officer, etc., who is in the active management of said bank at the time the ·deposit is received and not to one occupying a subordinate position, such as bookkeeper or assistant cashier, nor to an ·officer or director who is not at the time in the active man-agement of the bank, unless it be shown affirmatively that at the time of the reception of such deposit such officer knew of and assented to the reception thereof, and that the clause of section 2761, Revised Statutes 1889, making the fact that the bank is insolvent or in failing circumstances at the time the deposit is received *prima facie* evidence of such knowledge, has no application to them.

6. That in no event is an officer, etc., not in the active management of a bank, liable, although through neg-ligence he fails to inform himself of its true condition.

We concede to defendants' position that if the statute is not penal, this action at law can not be sustained, for the reason that the remedy would be in equity. But if penal, the action must be at law on a direct indi-vidual liability as equity is not the forum for the enforcement of penalties and forfeitures. There are statutes in many of the states which are designed to make the creditors of corporations more secure. The question whether these statutes made a penal liability has been frequently before the courts.

BANKS and bank-ing: receiving deposits: lia-bility of officer: statute: penalty.

As early as 1839, a case arose in Massachusetts on a statute reading as follows, "if any loss or deficiency of the capital stock in any bank shall arise from the official mis-management of the directors, the· stockholders at the time of such mismanagement shall, in their individual capacity, be liable to pay the same." The court said: "The evils and inconveniences of attempting to enforce this section by suits

at common law, would be incalculable; and such remedy would be inadequate, vexatious and mischievous. The only proper means of giving effect to this provision is by a process in equity; and this, of all cases which can arise, seems to call most loudly for a chancery jurisdiction. To a bill in equity all persons, however numerous, might be made parties; and all the relative and conflicting claims of the many creditors and stockholders settled and their proportionate rights to recover and liabilities to contribute, adjusted in a single suit." Harris v. Dorchester Parish, 23 Pick. 112. Same rule is announced in Crease v. Babcock, 10 Met. 525; Bank v. Stevenson, 5 Allen 398; Bank v. Stevenson, 10 Gray 232.

In Illinois the statute reads: "If the indebtedness of any stock corporation exceed the amount of its capital stock, the directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation." The supreme court of that state, in construing this statute, said: "The right of appellant to recover in the action instituted by him is based upon the hypothesis that where a corporation subject to the provisions of this section incurs an indebtedness in excess of the amount of its capital stock, the individual creditor acquires a right of action for such excess against so many of the directors or officers of the company as assented thereto, and that this right of action may be enforced in a court of law. We are unable to concur in this view of the matter. Such a construction would, manifestly, lead in most cases to great difficulties and hardships. In all cases, where the corporation is insolvent, to allow the individual creditor to collect the whole amount of his claim against the corporation from a solvent officer of the company to the exclusion of other creditors whose claims are equally meritorious, would certainly be the grossest inequality and manifestly unjust." Low v. Buchanan, 94 Ill. 76. This con-

struction of the statute of that state was subsequently approved and adopted in Harper v. Union Mfg. Co., 100 Ill. 225; Rounds v. McCormack, 114 Ill. 252; Woolverton v. Taylor, 132 Ill. 197; Queenan v. Palmer, 117 Ill. 619. The latter was a banking corporation case and involved the construction of a statute making the stockholders "individually responsible to make good losses to depositors or others." It was held that the liability of the stockholders was a common fund for the benefit of all the depositors to be administered in equity.

A like rule has been frequently announced by the supreme court of the United States in construing a similar statute. Hornor v. Henning, 93 U. S. 228; Stone v. Chisolm, 113 U. S. 302; Terry v. Little, 101 U. S. 216; Pollard v. Bailey, 20 Wall 520. In the case first cited, Justice Miller said: "We are of opinion that the fair and reasonable construction of the act is, that the trustees who assent' to an increase of the indebtedness of the corporation beyond its capital stock are to be held guilty of a violation of their trust; that congress intended, that, so far as this excess of indebtedness over capital stock was necessary, they should make good the debts of the creditors who had been the sufferers by their breach of trust; that this liability constitutes a fund for the benefit of all the creditors who are entitled to share in it, in proportion to the amount of their debts, so far as may be necessary to pay these debts.

"The remedy for this violation of duty as trustees is in its nature appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts; also, the number and names of the creditors, the amount of their several

debts, to determine the sum to be recovered of the trustees, and apportion among the creditors, in a manner which the trial by jury and the rigid rules of common law proceedings render impossible.

"This course avoids the injustice of many suits against defendants for the same liability, and the greater injustice of permitting one creditor to absorb all, or a very unequal portion, of the sum for which the trustees are liable; and it adjusts the rights of all concerned on the equitable principles which lie at the foundation of the statute."

But, while the statutes construed in some of these cases are in some respects similar to our statute, yet it will be found on an investigation that they are based on the idea of a contractual liability arising from the fact that the membership of the corporation, in connection with the statute respecting such membership, made the obligation substantially contractual. But when the statute imposes a liability on the corporation officer which was not his, as a consequence of his doing a forbidden act, it is a penalty (in a local sense) notwithstanding it may afford a remedy to the party complaining. It would be so held by the supreme court. Guerney v. Moore, 131 Mo. 672; Kritzer v. Woodson, 19 Mo. 327; Cable v. McCune, 26 Mo. 371. And so in New York the corporation officers were required by statute to make and file an annual report of the affairs of the corporation and if they failed to do so, they were made jointly and severally liable for its debts. This and similar statutes, were held by a number of decisions in that state to impose a penalty. Bank v. Bliss, 35 N. Y. 412; Stokes v. Stickney, 96 N. Y. 323. The same has been held in Minnesota, Illinois and Ohio. Bank v. Mfg. Co., 48 Minn. 349; Lawler v. Burt, 7 Ohio St. 340; Diversy v. Smith, 103 Ill. 378. In the latter case the distinction is made between the contractual and the penal statutes. And so the same distinction is pointed out in Wiles v. Snydam, 64 N. Y. 173 and in Gudsden v. Woodward, 103 N. Y. 242. The latter case was

an action against the officer for failing to make an annual report. The court said: "The action is not to recover a debt which he owes, but to impose upon him, as a penalty for his default, the payment of the debt of the corporation.    *    *    * The liability sought to be enforced against the defendant does not arise out of any contract obligation, but is imposed by the statute as a penalty for disobedience of its requirement."

Our statute prohibits receiving deposits, or contracting debts, when the bank is "insolvent or in failing circumstances" and provides that any officer "violating the provisions of this section shall be individually responsible for such deposits so received and all such debts so contracted." This clearly, though providing a remedy for the creditor and in that respect remedial, inflicts a punishment on the officer for his transgression by making him pay the debt of the corporation, which he did not owe. It will be observed that the statute is but a legislative compliance with the constitution of the state and that the language of each is in the imperative, commanding what shall not be done and prescribing onerous consequences. We are satisfied that the civil liability thus put upon the officers is a penalty. It was tacitly so considered, the question not being raised, in Cummings v. Winn, 89 Mo. 51, and in Speer v. Burlingame, 61 Mo. App. 75. It is a principle of law that one state will not enforce the penal laws of another, and it is hence proper to remark that we do not mean to say that the statute is penal in such interstate or international sense, so that the liability thereunder could not be enforced in other states, if the offending officer was found in such jurisdiction. Huntington v. Attrill, 146 U. S. 657.

In holding the statute to be penal we are aware of what may be said to be the results which logically follow such construction. Being penal it would be governed by the period prescribed by the statute of limitations as to penalties, unless otherwise provided. That the right of action and of recovery would accrue to the creditor, if he chose to assert it, even though he could have made

the sum due him from the bank if he had so undertaken. That, if a penalty, the injury or damage to the creditor or depositor by the insolvency is of no importance. The only question, after establishing he was a creditor, would be to show that the deposit had been received or the debt contracted when the bank was known to be insolvent or in failing circumstances. The offense is then complete and the punishment follows. The law, absolutely to put a stop to the betrayal of confiding depositors who are necessarily in ignorance of the condition of a bank, has declared that if the deposit is taken when the bank is in an insolvent condition, that fact makes up the officer's offense. There is no more qualification, or exception, that the depositor must thereby be damaged, or that he shall lose all, or part of his money, than there is in cases of theft or embezzlement where, by restoration or otherwise, no loss results. So it being a penalty the liability would not survive to the heirs, executors, or administrators of the offending officer. And since there is no right in a wrongdoer to subrogation, he would not be entitled, after paying the penalty for his offense, to be subrogated to the rights of the creditor against the bank, though by the terms of the statute itself he would have the right of contribution against his fellow offenders. The letter of the statute as to this right of contribution, confines it to a "director;" other officers being, perhaps inadvertently omitted. We thus state consequences which it may be claimed will result from holding the statute to be penal, but do not wish to be understood as so deciding, for the reason that such points are not directly involved in the record.

The result of our consideration of defendant's contentions that when plaintiff proved up his claim and had it allowed by the assignee of the insolvent bank, he became thereby estopped to prosecute this action under the statute against the defendant officers—that he thereby made his election of remedies—that the allowance of the claim was a judgment and

—: —: election of remedies.

became *res adjudicata*, is that the points are not well taken. If one has two inconsistent remedies and asserts one, he can not maintain the other, since he will be held to have made his election.  That was the case in the principal authority cited us by defendants.   Fowler v. Bank, 113 N. Y. 450. There, the bank paid a deposit to one not entitled to it, and the rightful owner learning the fact, sued the party to whom the bank had thus wrongfully made the payment, obtained judgment, but failing to make the money on account of the party's insolvency, brought the action against the bank.   The court denied his right to maintain the last suit.   That when he learned the facts he had one of two remedies: to not recognize the bank's payment and sue it for the money; or to bring an action against the party for money had and received to and for his use.   That in adopting the latter course he ratified and confirmed the action of the bank in making the payment. That the remedies were inconsistent and an election of one renounced the other.   The case of Nanson v. Jacob, 93 Mo. 344, was also one of inconsistent remedies.   The other cases cited merely establish the proposition that the allowance of a claim before an assignee merges it into a judgment preventing another action on the claim.

But here, we construe the statute in question as giving an additional consistent remedy to that against the bank.  While the statutory action is penal so far as the officers are concerned, it is remedial as to the bank's creditors.   While the depositor has two remedies, one against the bank, and one against the officers, they are not *inconsistent*, that is, in asserting one he will not stultify himself by asserting the other.   Each owe him the money and he may pursue both at the same time.   His suit against one is not an abandonment of his claim against the other, nor will his position in one stultify his position in the other.   The principle of election, estoppel or *res adjudicata* therefore fails of application.

The question of satisfaction, in whole, or in part, comes within the purview of this action; and it involves another phase

of the construction of the statute under consideration. Though
one has different remedies against one or more
persons, he can not have more than one satis-
faction.   This applies to the statute, though it
inflicts  a  penalty,  and  therefore  might  be
thought not to depend upon anything other than doing the
forbidden act.   But in reality it does depend upon something
else.  It depends upon the action of the depositor who may
or may not cause the penalty to be enforced.   It is, as to him,
a remedy, and he may prosecute it or not, as he likes.   He
may abandon or forgive the whole debt, or, he may collect
all, or a part of it from the bank, and thus extinguish, in
whole or in part, his claim against the officer.   By obtaining
satisfaction of his claim, there is no longer a base for action
against the officer.

*satisfaction.* (margin note)

Coming to the point that the evidence was insufficient
to base the verdict upon against C. W. and Sterling Price, we
feel constrained to rule against defendants. The
statute makes the fact of insolvency of the bank
*prima facie* evidence not only that the officer
knew it was insolvent, but that he *also assented*
to receiving the deposit.   And so we ruled in
Speer v. Burlingame, 61 Mo. App. 75.   There was added to
this other evidence bearing on the question:   the fact that
they were officers of the bank;   that Sterling was assistant
cashier and kept the books;  that C. W. was vice-president,
and though not participating in the active management, yet,
if testimony of some conversations of his is to be believed, he
knew enough of the operations of the bank to give him great
concern and uneasiness.

*——: ——: knowl-edge of failing condition of the bank.* (margin note)

The instructions in the case are numerous.   We can not
set them out within reasonable limits.   In considering them
it must be remembered that they are giving
construction to a harsh and unbending statute
intended as a heroic remedy against a great
and growing evil.   They, taken together, point

*——: ——: insol-vency: instruc-tion.* (margin note)

out in unambiguous language what constitutes insolvency, confining such condition to an inability to meet the *ordinary* demands against the bank in the usual and ordinary course of business. They declared that an ability to pay in the future, or an excess of assets over liabilities, without a present ability to pay debts as they become due in the usual course of business, was not solvency.

They declared that it was the duty of those officers receiving or assenting to the reception of deposits to know the financial condition of the bank, and that the law presumed they did know it. In our opinion, the instructions are supported by the following cases, criminal cases it is true, but for that reason not less applicable to a civil action in the respect here considered. State v. Buck, 120 Mo. 479; State v. Sattley, 131 Mo. 464; State v. Burlingame (s. c. of Mo. not yet reported), 48 S. W. Rep. 72.

——: ——: duty of officers: presumption.

After a careful examination of the record with the points of objection to the judgment we are satisfied that there is no sufficient ground upon which to reverse it, and it is accordingly affirmed. All concur.